UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 1:22-cv-03396 (CM)

FTE NETWORKS, INC.,

                Plaintiffs,

     -against-

ADAR BAYS, LLC, ADAR ALEF, LLC,
ARYEH GOLDSTEIN, CHAIM VAIL, EAGLE
EQUITIES, LLC, ERAN ISRAEL, SAMUEL
EISENBERG, YAKOV BORENSTEIN, AND
THE JOHN DOE AND JANE DOE INVESTORS,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ............................................................................................................... 5

    I.    This Court lacks subject matter jurisdiction over this action under the Rooker-Feldman doctrine .......................................................................................... 5

    II.    The Court should dismiss this action because the purported claims were released by the So-Ordered Settlement ...................................................................... 7

    III.    Even absent the So-Ordered Settlement, FTE fails to plead a plausible RICO claim ......................................................................................................... 9

        A.  FTE fails to plead that defendants were engaged in an unlawful business engaged in usurious lending .................................................................. 10

        B.  FTE fails to adequately plead the existence of an enterprise or that each defendant participated in the enterprise ................................................. 13

        C.  FTE does not plead any racketeering activity or pattern of racketeering activity ................................................................................................... 15

            1.  FTE does not plead any racketeering activity ................................. 15

            2.  FTE does not plead a pattern of racketeering activity ................... 17

        D.  FTE does not adequately plead any damages ....................................... 19

        E.  RICO does not provide for declaratory relief ....................................... 19

    IV.    The Court should dismiss FTE's RICO conspiracy claim .......................... 20

CONCLUSION ......................................................................................................... 21

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525 (S.D.N.Y. 2014) ......................20

*Adar Bays, LLC v GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021) ......................................12

*Adar Bays, LLC v GeneSYS ID, Inc.*, 962 F.3d 86 (2d Cir. 2020)................................12

*Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669 (2d Cir. 1997)................................7

*Albany Savings Bank, FSB v. Halpin*, 918 F. Supp 553 (N.D.N.Y. 1996) ........................8

*Angermeir v Cohen*, 14 F Supp 3d 134 (S.D.N.Y. 2014) .............................................15

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...............10

*Bankers Trust Co. v. Feldesman*, 566 F. Supp. 1235 (S.D.N.Y. 1983)........................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)...............................10

*Bennett v Genoa AG Ctr., Inc.*, 142 BR 616 (Bankr N.D.N.Y. 1992)............................17

*Black Radio Network, Inc. v NYNEX Corp.*, 44 F Supp 2d 565 (S.D.N.Y. 1999)........................14

*Bondi v Bank of Am. (In re Parmalat Sec. Litig.)*, 412 F. Supp 2d 392 (S.D.N.Y. 2006) .............16

*Booth v. 3669 Delaware*, 92 N.Y.2d 934, 703 N.E.2d 757, 680 N.Y.S.2d 899 (N.Y. 1998)..........7

*Burke v Lash Work Envts., Inc.*, 408 F App'x 438 (2d Cir 2011) ....................................7

*Cater v New York*, 2019 US Dist LEXIS 17780 (S.D.N.Y. Jan. 30, 2019) ....................7

*Cedar Swamp Holdings, Inc. v Zaman*, 487 F. Supp. 2d 444 (S.D.N.Y. 2007) .............................14

*Citadel Mgt., Inc. v Telesis Trust, Inc.*, 123 F Supp 2d 133 (S.D.N.Y. 2000)..............................15

*City of N.Y. v. 17 Chavez*, 944 F. Supp. 2d 260 (S.D.N.Y. 2013) ..................................13

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999).........................20

*Consorcio Prodipe v. Vinci*, 544 F. Supp. 2d 178 (S.D.N.Y. 2008)...................................8

*Consumers Distrib. Co v Hermann*, 107 Nev 387 (Nev. 1991)....................................12

*Cont. Petroleum Corp. v Corp. Funding Partners, LLC*, 2012 US Dist LEXIS 51841 (S.D.N.Y. Apr. 11, 2012) ..................................................................................................13

*Contr. Transp. Servs. v New Era Lending LLC*, 2018 US Dist LEXIS 241286 (S.D.N.Y. Oct. 26, 2018)................................................................................................11, 14, 16, 18

*Curtis & Assoc., P.C. v Law Offs. of David M. Bushman, Esq.*, 758 F Supp 2d 153 (E.D.N.Y. 2010)..............................................................................................................17

*Dabah v Franklin*, 2022 U.S. Dist LEXIS 60884 (S.D.N.Y. Mar. 31, 2022)................................5

*Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537 (2d Cir. 2018) ......................11

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987).............................16

*DLJ Mtge. Capital, Inc. v Kontogiannis*, 726 F Supp 2d 225 (E.D.N.Y. 2010)...........................19

*Durante Bros. & Sons, Inc. v Flushing Natl. Bank*, 755 F.2d 239 (2d Cir 1985).........................11

*Elsevier Inc. v W.H.P.R., Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010) ........................................10

*Empire Merchants, LLC v Reliable Churchill LLLP*, 2017 U.S. Dist. LEXIS 186669 (E.D.N.Y. Mar. 16, 2017)..............................................................................................................17

*Empire Merchants, LLC v Reliable Churchill LLLP*, 902 F.3d 132 (2d Cir 2018) ......................16

*F.D. Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362 (E.D.N.Y. 2002)...............21

*Ferrari v. Cnty. of Suffolk*, 790 F.Supp.2d 34, n.4 (E.D.N.Y. 2011)..............................................5

*First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)..............18

*Ford v Fourth Lenox Terrace*, 2011 US Dist LEXIS 77447 (S.D.N.Y. July 15, 2011).................6

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463 (2d Cir. 1995) ................................18

*Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*, 07-CV-8139, 2008 U.S. Dist. LEXIS 67462 (S.D.N.Y. Aug. 26, 2008) ................................19

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...................................19, 20

*Hylton v J.P. Morgan Chase Bank, N.A.*, 338 F Supp 3d 263 (S.D.N.Y. 2018) ...........................5

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 10-1801, 655 F.3d 136, 2011 U.S. App. LEXIS 17845, 2011 WL 3768827 (2d Cir. Aug. 26, 2011)....................................................7

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996) .................................10

*Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133 (2d Cir. 2000)......................................................7

*Limtung v. Thomas*, 2021 U.S. Dist LEXIS 186054 (E.D.N.Y. Sep. 28, 2021)............................20

*Liverpool v. City of New York*, 2021 U.S. Dist. LEXIS 152060 (S.D.N.Y. Aug. 12, 2021) ..........8

*Mangini v. McClurg*, 24 N.Y.2d 556, N.E.2d 386, 301 N.Y.S.2d 508 (N.Y. 1969) ......................7

*Marrietta Falconieri v. A & A Discount Auto Rental, et al.*, 262 A.D.2d 446, 692 N.Y.S.2d 137, (2d Dep't 1999)..........................................................................................................................8

*Massey v On-Site Mgr., Inc.*, 2011 U.S. Dist LEXIS 104823 (E.D.N.Y. Sep. 15, 2011)...............7

*Mateo v. Carinha,* 799 Fed. Appx. 51, 2020 WL 564160 (2d Cir. Feb. 5, 2020) ..........................8

*Moore v PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ..........................................................16

*Morefun Co. v. Mario Badescu Skin Care Inc.*, 2014 U.S. Dist. LEXIS 77710 (S.D.N.Y. June 6, 2014)..........................................................................................................................................7

*Motorola Credit Corp. v Uzan*, 322 F.3d 130 (2d Cir. 2003).......................................................19

*Palatkevich v Choupak*, 2014 US Dist LEXIS 10570 (S.D.N.Y. Jan. 24, 2014) ..........................14

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998) ...................................................8

*Professional Merchant Advance Capital, LLC v C Care Servs., LLC*, 2015 US Dist LEXIS 92035 (S.D.N.Y. July 15, 2015)............................................................................................................9

*R.H. Damon & Co. v. Softkey Software Prod., Inc.*, 811 F. Supp. 986 (S.D.N.Y. 1993)...............6

*RBS Holdings, Inc. v Wells Fargo Century, Inc.*, 485 F Supp 2d 472 (S.D.N.Y. 2007) ................7

*Reves v Ernst & Young*, 507 US 170 (1993)................................................................................15

*Riverwoods Chappaqua Corp. v Mar. Midland Bank, N.A.*, 30 F3d 339 (2d Cir 1994) ..............14

*Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91 (2d Cir. 1997) .....................................18

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207 (E.D.N.Y. 2014) .20

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008)..................................18

*United States v Moseley*, 980 F.3d 9 (2d Cir 2020) ...................................................................13

*Wade Park Land Holdings, LLC v Kalikow*, 2022 US Dist LEXIS 38828 (S.D.N.Y. Mar. 4, 2022)........................................................................................................................................11

*Wong v. CKX, Inc.*, 890 F. Supp. 2d 411 (S.D.N.Y. 2012) ..................................................5

*Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F. Supp. 276  (S.D.N.Y.1991) .....................................15

**Statutes**

18 U.S.C. § 1343 ...................................................................................... 10, 15, 16

18 U.S.C. § 1962(c) .................................................................................9, 10, 15, 16

18 U.S.C. § 1962(d) ........................................................................................20

18 U.S.C. § 1964(c) .......................................................................................19, 20

18 U.S.C. § 1961(1) .......................................................................................15, 16

CPLR § 5201(a) ...............................................................................................3

CPLR § 5201(b) ...............................................................................................3

CPLR § 215(6) ..............................................................................................9, 19

**Rules**

Fed. R. Civ. P 12(b)(1)...............................................................................1, 5, 6

Fed. R. Civ. P. 12(b)(6)..........................................................................1, 5, 7, 10

Rule 9(b) ..................................................................................................17

Defendants Eagle Equities, LLC ("Eagle Equities"), Chaim Vail ("Vail") and Yakov Borenstein ("Borenstein")(collectively "defendants"), by their attorneys, respectfully submit this memorandum of law in support of their motion, made pursuant to Fed. R. Civ. P. 12(b)(1) and Fed R. Civ. 12(b)(6), to dismiss plaintiff's FTE Networks Inc.'s ("FTE")complaint in its entirety with prejudice.

## Preliminary Statement

FTE, a Nevada corporation, brought this RICO action claiming that three loans it received in 2018 from Eagle Equities, another Nevada corporation, were usurious under New York law because they contained a discounted share conversion option. FTE brought this action despite settling and releasing all claims against Eagle Equities and its owners in 2019. Specifically, in an action in the New York County Supreme Court, FTE and Eagle Equities reached a settlement containing a broad, mutual general release. The settlement and release were then so-ordered by the New York County Supreme Court, with that court expressly retaining jurisdiction to enforce its terms by FTE's own-agreement. FTE, in that action, did not even claim the loans were usurious.

Despite its settlement and release and despite the New York County Supreme Court's ordered release, Eagle Equities brazenly brought this RICO action years later. In doing so, it did not even inform this Court of the settlement's existence. Nor did it plead any reason why this Court can, let alone should, ignore a binding settlement and release that was so-ordered by a state court. The Court should dismiss this action under the Rooker-Feldman doctrine, basic principles of comity, and because FTE already released these claims.

Even if the Court reaches the merits, the action should still be dismissed. FTE fails to plausibly allege a RICO claim, failing to allege a RICO enterprise, or the other elements of a

RICO claim, including any allegation that FTE actually exercised the conversion option or suffered any damages.

## Statement of Facts

In 2018, in exchange for three loans by Eagle Equites, FTE executed three convertible notes that provided for repayment with 4% interest and under certain conditions allowed Eagle Equities to convert the debt into FTE shares at a discount.[1] After it defaulted on its repayment obligations for the November 2018 convertible note, on July 31, 2019 FTE executed a confession of judgment in the amount of $1,206,116.27. in favor of Eagle Equities.[2] Eagle Equities entered the confession of judgment with the Kings County Supreme Court, Index No. 516655/2019, and the Clerk of the Court entered judgment in favor of Eagle Equities and against FTE for $1,206,116.27.

On August 22, 2019, Eagle Equities started a turnover proceeding in New York County Supreme Court against FTE seeking to enforce the confession of judgment. *See Eagle Equities LLC v FTE Networks Inc. et. al.*, Index No. 158196/2019. Eagle Equities sought an order pursuant to CPLR §§ 5225 and 5227, directing a turnover of assets of FTE to Eagle Equities sufficient to satisfy the Judgment, including, but not limited to, FTE's interest in its wholly owned subsidiary,

---

[1] Specifically, on April 27, 2018, FTE entered into a convertible note in the amount of $525,000.00 at the rate of interest of 4% per annum, with a limited right to convert the note into shares of FTE common stock at a 65% discount to the lowest closing bid price for the 21 days prior to the conversion. *See* April 27, 2018 Note, ECF 1-4. On June 13, 2018, FTE entered into a convertible note in the amount of $525,000.00 with a limited right to convert the note into shares of FTE common stock at a 65% discount to the lowest closing bid price for the 21 days prior to the conversion. *See* June 13, 2018 Note, ECF 1-5. Finally, on November 5, 2019, FTE entered into a convertible note in the amount of $1,070,000.00 at the rate of interest of 4% per annum, with a limited right to convert the note into shares of FTE common stock at a 65% discount to the lowest closing bid price for the 21 days prior to the conversion. *See* June 13, 2018 Note, ECF 1-6.

[2] *See* Confession of Judgment, Fleischmann Decl., Exhibit 1.

Benchmark Builders, Inc., and an order pursuant to CPLR § 5201(a) and (b) enforcing the Judgment by virtue of the garnishment or other delivery of shares of stock and/or the proceeds of the sale of stock maintained or held by FTE or by any entity owned and or controlled by FTE, as judgment debtor, to Eagle Equities, to satisfy the Judgment (the "Turnover Proceeding").[3]

On September 5, 2019, FTE filed a Verified Answer and Cross-Petition and a Verified Cross-Petition asking the court to dismiss the action because the confession of judgment was allegedly forged or otherwise obtained by fraud.[4] FTE did not claim as an affirmative defense that the underlying note was usurious.[5] Furthermore, FTE has never claimed in any action that Eagle Equities attempted to exercise the conversion option it now alleges to be usurious.

FTE and Eagle Equities settled the Turnover Proceeding and entered into a Settlement and Forbearance Agreement dated September 23, 2019, which was so-ordered the court on September 27, 2019 (the "So-Ordered Settlement").[6] Under the So-Ordered Settlement, Eagle Equities "agree[d] to forbear on its collection of the Judgment[,]" while, "FTE agree[d] to pay the full Judgment amount, plus 7% statutory interest from July 31, 2019 (the "Settlement Amount") according to a monthly payment schedule between September 12, 2019 through August 17, 2020.[7]

---

[3] *See* Verified Petition, Fleischmann Decl., Exhibit 3.

[4] *See* Verified Answer and Cross-Petition, Fleischmann Decl., Exhibit 4. In order to ensure a complete record, Eagle Equities' reply to the cross-petition is annexed to the Fleischmann Decl. as Exhibit 5.

[5] *Id.*

[6] *See* So-Ordered Settlement, Fleischmann Decl., Ex. 2.

[7] *Id.* at 2.

The parties provided each other with mutual general releases. FTE released Eagle

Equities as follows:

> Except for the agreements, obligations and covenants arising under this Agreement, Respondents and their agents, insurers, legal successors, licensees, heirs and assigns, hereby relieve, release and forever discharge the Petitioner and its respective agents, servants, officers, directors, employees, shareholders, and attorneys, members, and its respective parents, subsidiaries, affiliates, legal successors, licensees, assigns and indemnified parties of and from any and all manner of obligations, claims, demands, actions, causes of action, suits, injunctions, judgments, executions, liens, liabilities, debts, sums of money, accounts, covenants, promises, controversies, agreements, breaches of contract, torts, damages, losses, costs, or expenses of any nature or description whatsoever whether known or unknown or suspected or unsuspected, which now exist, or at any time heretofore from the beginning of time existed.[8]

Thus, FTE released Eagle Equities from any all claims and causes of action that FTE had

or may have had at the time, including, but not limited to, any claims and causes of action related

to the other issued convertible notes dated April 27, 2018 and May 13, 2018. FTE also expressly

acknowledged that it received the advice of independent counsel prior to entering the So-

Ordered Settlement. This release became a court-order when it was so-ordered by the Court,

with the New York County Supreme Court retaining jurisdiction to enforce its terms.[9]

Despite the settlement and release, and despite failing to interpose a usury defense,

FTE filed this action years later alleging that the underlying loan transactions were unlawful

because they were usurious and violated RICO. Complaint, ECF 1.[10] FTE's Complaint,

however, alleges no facts that would allow this Court to void a New York State court-

ordered settlement. Indeed, in its Complaint, FTE entirely ignores the So-Ordered

---

[8] *See* So-Ordered Settlement, Fleischmann Decl., Ex. 2. "Respondents" refers to FTE and its wholly owned affiliated entity, Benchmark Builders, Inc. and "Petitioner" refers to Eagle Equities.

[9] *See Id.*

[10] A copy of the Complaint is also annexed to the Fleischmann Decl. as Ex. 6.

Settlement, neglecting to mention that another court has already released its purported claims. FTE also nowhere alleges that Eagle Equites actually exercised the allegedly usurious conversion option or that is has repaid any sums owed to Eagle Equities.

For the reasons detailed herein, the Court should dismiss this action in its entirety.

<u>Argument</u>

**I.      This Court lacks subject matter jurisdiction over this action under the Rooker-Feldman doctrine**

The Court lacks subject matter jurisdiction over this action because the New York County Supreme Court so-ordered a release of FTE's purported claims.[11] "An argument that the court does not have subject matter jurisdiction pursuant to the Rooker-Feldman doctrine is properly considered under Rule 12(b)(1)." *Hylton v J.P. Morgan Chase Bank, N.A.*, 338 F Supp 3d 263, 273 (S.D.N.Y. 2018). "When presented with a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action." *Wong v. CKX, Inc.*, 890 F. Supp. 2d 411, 414-15 (S.D.N.Y. 2012).

On a motion to dismiss "the Court may . . . 'take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*,' as well as documents submitted by defendants if '(1) plaintiffs have undisputed notice of the contents of such documents; and (2) such documents are integral to the plaintiffs' claim.'" *Dabah v Franklin*, 2022 U.S. Dist LEXIS 60884, at *5 (S.D.N.Y. Mar. 31, 2022) (quoting *Ferrari v. Cnty. of Suffolk*, 790 F.Supp.2d 34, 38 n.4 (E.D.N.Y. 2011)

---

[11] *See* So-Ordered Settlement, Fleischmann Decl., Exhibit 2.

and *R.H. Damon & Co. v. Softkey Software Prod., Inc.*, 811 F. Supp. 986, 989 (S.D.N.Y. 1993)). The Court should take judicial notice of the So-Ordered Settlement and all the filings in the Turnover Proceeding.

By filing this RICO action while hiding the So-Ordered Settlement from the Court, FTE wants this Court to erroneously ignore a state court-ordered judgment and release. This violates the Rooker-Feldman doctrine, which "provides that a federal district court has no jurisdiction to consider collateral attacks to state court judgments." *Ford v Fourth Lenox Terrace*, 2011 US Dist LEXIS 77447, at *14 (S.D.N.Y. July 15, 2011). In *Ford*, the Court rejected such a collateral attack of a state court so-ordered stipulation and release "in an action which was settled by the execution of the Stipulation, which was <u>so ordered</u> by Judge Ruben Martino on April 14, 2009." *Id.* at *13-14. Here too the Court lacks subject matter jurisdiction over this proceeding because the state court so-ordered a stipulation and release finally disposing of the action and thus the Court should dismiss this action under Fed. R. Civ. P 12(b)(1).

Indeed, not only did the state court so-order the release, but FTE agreed that the state court would retain jurisdiction to enforce the terms of the So-Ordered Settlement. Nothing gives FTE the right to litigate an action in federal court in derogation of the So-Ordered Settlement. Indeed, when a stipulation of settlement is so-ordered, it becomes a court order whose violation becomes punishable by contempt. *See e.g. In re Peck*, 155 BR 301, 309 (Bankr D. Conn 1993) (contempt is an appropriate remedy for violating so-ordered stipulation). FTE's filing of this suit itself violates the New York County Supreme Court's order and makes it potentially liable for contempt, not to mention sanctions from this Court.

## II. The Court should dismiss this action because the purported claims were released by the So-Ordered Settlement

The Court should separately dismiss this action under Fed. R. 12(b)(6). When "a release is valid and applicable to plaintiff's particular claims, dismissal is proper unless the complaint alleges, with sufficient particularity, that plaintiff has a recognized defense to the release." *Massey v On-Site Mgr., Inc.*, 2011 U.S. Dist LEXIS 104823, at *4-5 (E.D.N.Y. Sep. 15, 2011)(citing *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 10-1801, 655 F.3d 136, 2011 U.S. App. LEXIS 17845, 2011 WL 3768827, at *1 (2d Cir. Aug. 26, 2011); *See also RBS Holdings, Inc. v Wells Fargo Century, Inc.*, 485 F Supp 3d 472, 479 (S.D.N.Y. 2007). In other words, whether FTE's claims are "extinguished by the Settlement Agreement and Release are questions whose resolution is properly addressed by the District Court on a Rule 12(b)(6) motion." *Burke v Lash Work Envts., Inc.*, 408 F App'x 438, 441 (2d Cir 2011). "Courts in this circuit routinely grant motions to dismiss" under Fed. R. Civ. P. 12(b)(6) on the grounds that the claims were released. *Cater v New York*, 2019 US Dist LEXIS 17780, at *12 (S.D.N.Y. Jan. 30, 2019) (citing cases). A release "constitutes a complete bar to an action on a claim which is the subject of the release." *Morefun Co. v. Mario Badescu Skin Care Inc.*, 2014 U.S. Dist. LEXIS 77710, at *4 (S.D.N.Y. June 6, 2014) (citing *Interpharm*, 655 F.3d at 142).

"Under New York law, general releases are governed by principles of contract law." *Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997) (citing *Mangini v. McClurg*, 24 N.Y.2d 556, 249 N.E.2d 386, 389, 301 N.Y.S.2d 508 (N.Y. 1969)). "An unambiguous release 'should be enforced according to its terms.'" *Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 144-45 (2d Cir. 2000) (citing *Booth v. 3669 Delaware*, 92 N.Y.2d 934, 703 N.E.2d 757, 758, 680 N.Y.S.2d 899 (N.Y. 1998). "Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be

enforced." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998) (citations omitted). "A release may not be treated lightly, and should be set aside or reformed only under circumstances and under rules which would render any other result a grave injustice. *Albany Savings Bank, FSB v. Halpin*, 918 F. Supp 553, 557 (N.D.N.Y. 1996) (internal quotation marks and citations omitted); *Marrietta Falconieri v. A & A Discount Auto Rental, et al.*, 262 A.D.2d 446, 692 N.Y.S.2d 137, 138 (2d Dep't 1999) ("Where the language with respect to the parties' intent is clear and unambiguous, it will be given effect, regardless of one party's claim that she intended something else."); *Ford,* 2011 US Dist LEXIS 77447, at *11-13.

The general release here applies not only to the November 2, 2018 Note underlying the Judgment that was the subject of the Turnover Proceeding, but to any and all claims and causes of action related to the previously issued convertible Notes dated April 27, 2018 and May 13, 2018. This is because release included and continues to include all claims "of any nature or description whatsoever whether known or unknown or suspected or unsuspected, which now exist, or at any time heretofore from the beginning of time exist."[12] The "[w]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *Liverpool v. City of New York*, 2021 U.S. Dist. LEXIS 152060, *6 (S.D.N.Y. Aug. 12, 2021) (quoting *Mateo v. Carinha,* 799 Fed. Appx. 51, 2020 WL 564160, *2 (2d Cir. Feb. 5, 2020). Furthermore, "when general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Consorcio Prodipe v. Vinci*, 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008) (internal citations and quotation marks omitted).

---

[12] *Id.*

The So-Ordered Settlement also contains an unambiguous release of all claims for not only Eagle Equities but also its "agents, servants, officers, directors, employees, shareholders, and attorneys [and] members."[13] FTE here is suing the individual defendants as owners and members of Eagle Equities.

FTE alleges no facts, let alone with particularity, that would allow the Court to ignore the So-Ordered Settlement. Indeed, it failed to raise a usury defense in the Turnover Proceeding before entering into the So-Ordered Settlement, thus waiving that defense. *Professional Merchant Advance Capital, LLC v C Care Servs., LLC*, 2015 US Dist LEXIS 92035, at *13-14 (S.D.N.Y. July 15, 2015) (noting that usury is an affirmative defense that is waived if not raised in an answer.). A usury defense also becomes time barred after one year pursuant to CPLR 215(6) and FTE cannot use RICO to resurrect a lapsed, released claim. The Court should thus also dismiss the Complaint in its entirety because FTE released these claims.

### III. Even absent the So-Ordered Settlement, FTE fails to plead a plausible RICO claim

Even if not dismissed because of the So-Ordered Settlement, FTE fails to state a RICO claim. FTE contends that defendants violated 18 U.S.C. § 1962(c) which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Specifically, FTE claims that defendants collected unlawful, usurious debts and

---

[13] *See* So-Ordered Settlement, Fleischmann Decl., Ex. 2 at § 5.

engaged in a pattern of racketeering activity by violating 18 U.S.C. § 1343, the federal wire fraud statute, through "[i]ts repeated and continuous use of such conduct." Compl. ¶ 59, ECF 1.

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

"Allegations of racketeering have been described as a 'thermonuclear device,'" *Elsevier Inc. v W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 300 (S.D.N.Y. 2010) (quotations omitted) and "courts are charged with flushing out frivolous RICO allegations at the earliest possible stage of litigation." *Id.* Congress did not intend to "sweep all ordinary injuries occasioned by predicate criminal acts within the dragnet of [RICO's] treble damage remedy."[14]

### A. FTE fails to plead that defendants were engaged in an unlawful business engaged in usurious lending

FTE has not plausibly alleged that defendants are engaged in the business of lending money at a usurious rate. A RICO claim for the collection of unlawful debt under 18 USC § 1962(c) requires a plaintiff to plausibly allege (1) the existence of a RICO enterprise that

---

[14] *Bankers Trust Co. v. Feldesman*, 566 F. Supp. 1235, 1241 (S.D.N.Y. 1983)

10

affected interstate commerce; (2) the individual defendants were employed by or associated with the enterprise; and (3) participated in the conduct of the affairs of the enterprise through collection of unlawful debt. *Durante Bros. & Sons, Inc. v Flushing Natl. Bank*, 755 F.2d 239, 248 (2d Cir 1985). Furthermore, with respect to unlawful debt, "a plaintiff must allege that (1) 'the debt was unenforceable in whole or in part because of state or federal laws relating to usury,' (2) 'the debt was incurred in connection with "the business of lending money . . . at a [usurious] rate,'" and (3) 'the usurious rate was at least twice the enforceable rate.'" *Wade Park Land Holdings, LLC v Kalikow*, 2022 US Dist LEXIS 38828, at *72-73 (S.D.N.Y. Mar. 4, 2022) (quoting *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 539 (2d Cir. 2018) (summary order) (alteration in original).

"The statute does not reach the collection of a loan that is made occasionally and not as part of the 'business of lending money' at a usurious rate." *Wade*, 2022 US Dist LEXIS 38828, at *73. "The requirement that the loan have been incurred in connection with 'the business of' making usurious loans seems aimed at the same goal, *i.e.*, the exclusion from the scope of the statute of occasional usurious transactions by one not in the business of loan sharking." *Durante Bros. & Sons, Inc. v Flushing Natl. Bank*, 755 F2d 239, 250 (2d Cir. 1985). "[T]he civil RICO action is not simply an action to recover excessive interest or to enforce a penalty for the overcharge. RICO is concerned with evils far more significant than the simple practice of usury." *Id.* at 248; *Contr. Transp. Servs. v New Era Lending LLC*, 2018 US Dist LEXIS 241286, at *16 (S.D.N.Y. Oct. 26, 2018) (dismissing RICO complaint where it "fail[ed] to specify any other individuals or companies to whom Defendants have lent money or the usurious interest rates attached to any other loans made by Defendants.").

Even assuming for argument's sake that these particular notes were usurious under New York law, there is no allegation that defendants regularly lend money under the governance of New York law or in violation of any governing usury law.[15] Other states, such as Nevada, where Eagle Equities and FTE are incorporated, expressly do not prohibit usury.[16] Before 2021, most courts here had held that these convertible notes were not usurious in New York. *Adar Bays, LLC v GeneSYS ID, Inc.*, 962 F.3d 86, 91 (2d Cir. 2020) ("The district courts of this Circuit have generally concluded that a conversion option at a discounted rate does not violate usury laws."); *Id.* at 90 ("The New York courts to have considered this issue have generally rejected the view that a conversion option with a discounted rate should be treated as interest."). In 2021, the New York Court of Appeals ruled that such convertible notes may be usurious, their status a question of fact. *Adar Bays, LLC v GeneSYS ID, Inc.*, 37 N.Y.3d 320, 338 (2021) ("[T]he mere fact that a fixed-price future conversion option may be exercised at a future usurious rate does not render the loan usurious on its face . . . usurious intent in such situations is a question of fact, not a matter of law. However, neither does the contingent nature of the option's exercise remove the loan from the scrutiny of the usury law."). It further held that "[t]he hypothetical possibility that a future exercise of a floating-price conversion option may result in a return exceeding 25% does not render a loan usurious on its face. Rather, the value of such an option is a question of fact, and the burden to prove that value is on the borrower." *Id.* at 334. Even under New York law, furthermore, "[u]surious intent is an essential element of usury . . ." *Id.* at 336 (internal citations and quotations omitted).

---

[15] Defendants only assume for purposes of this motion the validity of the New York choice of law provision in the notes.

[16] *Consumers Distrib. Co. v Hermann*, 107 Nev 387, 393 (Nev. 1991).

FTE simply makes no allegation that defendants have engaged in the business of providing usurious loans, or did so with any usurious intent, or that they have even made other loans under the rubric of New York law. *Id.* 351-352 (Garcia J., dissenting) ("For the future, we can anticipate that New York, traditionally the preeminent commercial center in the United States, is off limits for this type of lending. Choice of law is just that—a choice. Rather than providing strict protection of more vulnerable borrowers from extortionate rates, today's holding will cause commercial borrowers and lenders to decamp. Our courts will lose oversight, our law relevance.") (citations and quotations omitted). Even for loans made in New York, choice of law provisions providing for jurisdictions not barring usury does not violate New York public policy with respect to corporate loans. *See United States v Moseley*, 980 F.3d 9, 22 (2d Cir 2020).

**B.  FTE fails to adequately plead the existence of an enterprise or that each defendant participated in the enterprise**

The complaint does not adequately plead the existence of a RICO "enterprise." According to the Complaint, the "enterprise" consists of all the named defendants, but the Complaint contains no factual allegations connecting the Eagle Equities defendants (Eagle Equities and its members) to the Adar Bays defendants (Adar Bays and its members) other than the happenstance that they both loaned money to FTE. Instead, FTE appears to have simply sued all its lenders, who it admits are owned by different people in different states.

An enterprise does not arise from "a series of similar but essentially separate frauds [or wrongs] carried out by related entities." *City of N.Y. v.* 17 *Chavez*, 944 F. Supp. 2d 260, 275 (S.D.N.Y. 2013). "A plaintiff's conclusory naming of a string of entities does not adequately allege an enterprise." *Cont. Petroleum Corp. v Corp. Funding Partners, LLC*, 2012 US Dist LEXIS 51841, at *14 (S.D.N.Y. Apr. 11, 2012) (citations and quotations omitted.). "If each act of fraud is equally effective without the perpetration of any other act of fraud – even if perhaps

effective to a far lesser or different magnitude – then there is no RICO enterprise." *Id.* Indeed, "allegations of a 'hub-and-spoke' structure – that is, allegations that a common defendant perpetrated various independent frauds, each with the aid of a different co-defendant – do not satisfy the enterprise element of a RICO claim." *Cedar Swamp Holdings, Inc. v Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007); *Contr. Transp. Servs. v New Era Lending LLC*, 2018 US Dist LEXIS 241286, at *11 (S.D.N.Y. Oct. 26, 2018) (no enterprise without allegations as to how enterprise functioned as a unit)

To the extent the "enterprise" consists of Eagle Equities and its alleged members, Vail and Bornstein, this is not an "enterprise" that is any way distinct from the RICO person. "[C]ivil RICO claims against corporations who are sued as RICO 'persons' fail where the members of the alleged 'enterprise' include only the corporate defendant, related companies, and its employees or agents, and no other unrelated parties. For distinctness purposes, the related companies, employees, and agents add nothing to the corporate defendant itself. Thus, the enterprise is not 'sufficiently distinct' from the corporate defendant 'person.'" *Palatkevich v Choupak*, 2014 US Dist LEXIS 10570, at *40 (S.D.N.Y. Jan. 24, 2014) (citing *Riverwoods Chappaqua Corp. v Mar. Midland Bank, N.A.*, 30 F3d 339, 344 (2d Cir 1994) ("Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself. Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation."); *Black Radio Network, Inc. v NYNEX Corp.*, 44 F Supp 2d 565, 581 (S.D.N.Y. 1999) ("Corporate affiliates and their

employees cannot constitute a RICO enterprise by themselves. A corporate entity cannot be both the enterprise and the person who conducts the affairs of the enterprise through racketeering.").

In addition, to establish a violation of §1962(c), Plaintiff's must also show that the defendant/person "participated in the conduct of" the enterprise. As the Supreme Court explained in *Reves v Ernst & Young*, 507 US 170 (1993), "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id. at 179*. There are no particularized allegations that either of the individual defendants actually directed the affairs of the purported enterprise or even participated in it.

### C.   FTE does not plead any racketeering activity or pattern of racketeering activity

#### *1.   FTE does not plead any racketeering activity*

FTE does not adequately plead any racketeering activity. "Racketeering activity" includes violations of various federal statutes as listed in 18 USCS § 1961(1), including the wire fraud statute, 18 USC § 1343. To state a claim predicated on a "pattern of racketeering activity" requires that "each defendant must be alleged to have engaged in two or more predicate acts." *Citadel Mgt., Inc. v Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 155 (S.D.N.Y. 2000). "When a plaintiff alleges fraud in the context of a RICO claim, the plaintiff must meet the heightened pleading requirements for fraud claims." *Angermeir v Cohen*, 14 F. Supp 3d 134, 145 (S.D.N.Y. 2014); *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 281 (S.D.N.Y.1991) ("All of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions") (citation and internal quotations omitted); *Citadel Mgt., Inc. v Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 155 (S.D.N.Y. 2000) ("[W]here, as here, more than one defendant is charged with fraud, the Amended Complaint must particularize each defendant's alleged participation in the fraud.").

FTE alleges that defendants engaged in a pattern of racketeering activity because "[t]he Enterprise's conduct constitutes "fraud by wire" within the meaning of 18 U.S.C. 1343, which is "racketeering activity" as defined by 18 U.S.C. 1961(1). Its repeated and continuous use of such conduct to participate in the affairs of the Enterprise constitutions a pattern of racketeering activity in violation of 18 U.S.C. 1962(c)." Compl. ¶ 59, ECF 1. In other words, FTE alleges that the alleged usurious notes were wire fraud because they were entered "for the purpose of collecting upon fraudulent fees through electronic wires." Compl. ¶ 58, ECF 1. The fraudulent fees according to the complaint are the fees in the notes that FTE alleges to be usurious.

"Wire fraud, 18 U.S.C. § 1343, has three elements: (1) a scheme to defraud, (2) money or property that is the object of the scheme, and (3) use of the wires to further the scheme." *Empire Merchants, LLC v Reliable Churchill LLLP*, 902 F.3d 132, 137 (2d Cir 2018). "For RICO liability to exist as a result of a violation of these statutes, the defendant must have made misrepresentations that are material to the harm caused to the victim." *Moore v PaineWebber, Inc.*, 189 F.3d 165, 169-170 (2d Cir. 1999); *Bondi v Bank of Am. (In re Parmalat Sec. Litig.)*, 412 F. Supp 2d 392, 401-402 (S.D.N.Y. 2006). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Contr.*, 2018 US Dist LEXIS 241286, at *7 (S.D.N.Y. Oct. 26, 2018) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

In addition, "[t]here must be 'transaction causation,' meaning that the misrepresentation must have led the plaintiffs to enter into the transactions at issue, and there must be "loss causation," meaning that the misrepresentation must be both an actual and a proximate source of the loss that the plaintiffs suffered." *Moore*, 189 F.3d at 170. A wire fraud claim must be plead

with particularity. *Curtis & Assoc., P.C. v Law Offs. of David M. Bushman, Esq.*, 758 F Supp 2d 153, 176 (E.D.N.Y. 2010) ("Rule 9(b) requires that RICO allegations of mail and wire fraud be pleaded with particularity.").

FTE does not plead any misrepresentations, let alone with particularity. Rather, FTE claims that the notes "contain one-sided terms, such as the convertible stock option, that prey upon the desperation of the business and their individual owners and help conceal the fact that the transactions, including those involving FTE, are really loans" or "numerous knowingly false statements, are designed to fail, and contain numerous improper fees and penalties that violate New York's strong public policy of prohibiting usurious loans." Compl. ¶¶ 33-34, ECF 1. The Complaint pleads no particular misrepresentations or by whom they were made. FTE is apparently dissatisfied with the fully disclosed terms of the notes—but this is not fraud.

Nor does FTE plead "the number and content of the alleged wire communications, and . . . how such communications furthered" the alleged fraudulent scheme. *Bennett v Genoa AG Ctr., Inc.*, 142 BR 616, 623 (Bankr N.D.N.Y. 1992) (citations omitted). FTE does not plead transaction causation—it does not allege that it would not have entered these notes absent any alleged misrepresentation. It also does not plead loss causation, which requires pleading that the misrepresentation directly caused the loss. *Empire Merchants, LLC v Reliable Churchill LLLP*, 2017 U.S. Dist. LEXIS 186669, at *14 (E.D.N.Y. Mar. 16, 2017) ("[P]roximate cause under RICO requires the defendants' predicate acts to have directly caused plaintiff's injury."). Indeed, FTE does not identify any loss.

### 2. *FTE does not plead a pattern of racketeering activity*

FTE fails to adequately allege a pattern of racketeering activity. "To establish a 'pattern of racketeering activity,' a plaintiff must plead at least two predicate acts, and must show that the

predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *GICC Capital Corp. v. Tech. Fin. Group, Inc.,* 67 F.3d 463, 465-466 (2d Cir. 1995); *Citadel Mgt.,* 123 F. Supp. 2d at 155 (each defendant must be alleged to have engaged in two predicate acts).

To satisfy the requirement of a threat of continuing criminal activity, "[a] plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Capital Asset Management, Inc. v. Satinwood, Inc.,* 385 F.3d 159, 180 (2d Cir. 2004) (internal citation omitted).

"Open-ended continuity . . . requires a plaintiff to show a threat of ongoing criminal activity beyond the period in which the predicate acts were committed." *Contr.*, 2018 U.S. Dist. LEXIS 241286, at *12-14. Here, FTE pleads no facts that would support any plausible claim of ongoing criminal activity. *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (finding no open-ended continuity where "[t]here was no threat that the alleged fraud . . . would continue in the future.").

"Closed-ended continuity involves acts occurring over a 'substantial' amount of time, which is typically two years in the Second Circuit, although this is not a bright line rule." *Contr. Transp. Servs. v New Era Lending LLC*, 2018 US Dist LEXIS 241286, at *12-14 (S.D.N.Y. Oct. 26, 2018) (citing *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). "The relevant time period is the "time during which RICO predicate activity occurred . . ." *Id.*

Here too, the complaint merely complains of conduct occurring in 2018 to a single borrower, namely FTE.

18

**D.  FTE does not adequately plead any damages**

FTE nowhere identifies or alleges how it was damaged.  Pleading damages is a prerequisite to have standing to bring RICO claim. Under RICO, "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court."18 U.S.C. § 1964(c). "To satisfy RICO's standing requirements, a plaintiff must demonstrate, '(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation.'" *Motorola Credit Corp. v Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990).

FTE admits having accepted millions of dollars in monies loaned by Eagle Equities but nowhere does it allege that it has repaid any of these monies or that Eagle Equities ever exercised the allegedly usurious conversion options.  In other words, it has not plead any damages whatsoever.

Furthermore, even if it were damaged, until the amount of damages become clear and definite, a RICO claim is not ripe and a RICO plaintiff lacks standing. *Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*, 07-CV-8139, 2008 U.S. Dist. LEXIS 67462, at *12 (S.D.N.Y. Aug. 26, 2008) ("Plaintiffs lack statutory standing to sue under RICO, for their damages have yet to become "clear and definite' and are thus unripe."); *DLJ Mtge. Capital, Inc. v Kontogiannis*, 726 F Supp 3d 225, 236-237 (E.D.N.Y. 2010).

**E.  RICO does not provide for declaratory relief**

FTE also seeks declaratory relief declaring the notes void and unenforceable under New York state law even though declaratory relief is not authorized under RICO, and even though such relief would be barred under New York's one-year statute of limitations. CPLR 215(6).

RICO only authorizes a "person injured in his business or property" to recover "threefold the damages he sustains and the costs of the suit . . ." 18 U.S.C. § 1964(c). It does not authorize declaratory relief.

## IV.     The Court should dismiss FTE's RICO conspiracy claim

Because FTE fails to allege a RICO claim, its RICO conspiracy claim under 18 U.S.C. § 1962(d) should also be dismissed. *Wade*, 2022 US Dist LEXIS 38828, at \*72-73 ("In this Circuit, when the allegations of a complaint fail to establish a substantive RICO violation, they also do not establish a RICO conspiracy claim.") (citations omitted).

Even if the Court does not dismiss the conspiracy claim because there is no underlying RICO violation, the conspiracy claim still fails. To state such a claim, a plaintiff must allege that (1) defendants "agreed to form and associate . . . with a RICO enterprise"; (2) defendants "agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise"; and (3) if those predicate acts were carried out, they would constitute a pattern of racketeering activity. *Limtung v. Thomas*, 2021 U.S. Dist LEXIS 186054, \*25 (E.D.N.Y. Sep. 28, 2021) (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244-45 (2d Cir. 1999). Because "the core of a RICO civil conspiracy is an agreement to commit predicate [RICO] acts, "such a complaint, at the very least, must allege specifically such an agreement." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 230 (E.D.N.Y. 2014) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)). As such, a RICO conspiracy claim should be dismissed where the plaintiff alleges "no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations." *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014). Conclusory allegations that the defendants 'agreed to commit' the violations are

insufficient.  *F.D. Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373-74 (E.D.N.Y. 2002).

Here, there are no allegations that connect the loans given and notes issued by Eagle Equities with those given and issued by Adar Bays, LLC and/or Adar Alef, LLC.  Further, FTE has not adequately pled an agreement to commit any RICO predicate actions or factually to allege a meeting of the minds between any of the named defendants.  Thus, even if this Court were to sustain the first cause of action, and it should not, the second cause of action should still be dismissed.

## Conclusion

The Court should dismiss this action in its entirety with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
        June 21, 2022

By: /s/ Jeffrey Fleischmann
        Jeffrey Fleischmann
150 Broadway, Suite 900
New York, New York 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com
*Attorneys for Defendants Eagle Equities, LLC,*
*Chaim Vail and Yakov Borenstein*